| Date Issued: | Policy Number: | Previous Policy Number: |
|---|---|---|
| 11/11/2005 | LSI000306-005 | LSI000306-004 |



# REAL ESTATE APPRAISERS PROFESSIONAL LIABILITY

**LSI Corporation**
Member of Liberty Mutual Group

175 Berkeley Street
Boston, MA 02117

THIS IS A CLAIMS MADE AND REPORTED POLICY.
PLEASE READ IT CAREFULLY.

LIBERTY SURPLUS INSURANCE CORPORATION (herein called "the Company")

## Item  DECLARATIONS

| | |
|---|---|
| 1. Customer ID: 123410<br>Named Insured:<br>KIRKPATRICK AND ASSOCIATES<br>Dixie Kirkpatrick<br>6007 Pleasant Hill Court<br>Arlington, TX 76016 | This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Article 21.28-C, Insurance Code. Section 12, Article 1 14-2, Insurance Code, requires payment of a 4.85% percent tax on gross premium. |
| 2. Policy Period:<br>From: 12/27/2005    To: 12/27/2006<br>12:01 A.M. Standard Time at the address stated in Item 1. | |
| 3. Deductible: $1,000.00    Each Claim | |
| 4. Retroactive Date:    12/27/1996 | |
| 5. Inception Date:    12/27/2001 | |
| 6. Limits of Liability:<br>A. $300,000.00    Each Claim<br>B. $300,000.00    Aggregate | The Limit of Liability for Each Claim and in the Aggregate is reduced by Damages and Claims Expenses as defined in the Policy. |
| 7. Mail All Notices to Agent: | Robert C. Wiley<br>Liability Insurance Administrators<br>1600 Anacapa Street<br>Santa Barbara, California 93101<br>(805) 963-6624;   Fax: (805) 962-0652 |
| 8. Annual Premium:    $750.00  + $36.37 Surplus Lines Tax | |
| 9. Number of Appraisers:    2 | |
| 10. Forms attached at issue: LIA002S (07/01)   LIA TX Notice (06/05)   LIA009 (10/01)   LIA012 (07/01)<br>LIA018 (07/01)   LSIC CG 21701102 (01/05)   LSIC IL 09 98 01 05 | |

This Declarations Page together with the completed and signed Policy Application including all attachments and exhibits thereto, and the Real Estate Appraisers Professional Liability Insurance Policy shall constitute the contract between the Named Insured and the Company.

By _____
Authorized Signature

LIA001S (07/01)

#

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXTENDED REPORTING PERIOD ENDORSEMENT

This endorsement, effective on 12/27/2006 at 12:01 A.M. standard time at the address of the Named Insured

Forms a part of Policy Number: LSI000306-005

Issued to: ___ KIRKPATRICK AND ASSOCIATES_____

In consideration of the additional premium of $1,500.00 + 72.75 S.L. Tax and in accordance with Section VI. of the Policy, Condition (J), an **Extended Reporting Period** of 3 years applies to the Policy.

All other terms and conditions of this Policy remain unchanged.

LIA011 (07/01)            Page 1 of 1
01/18/007

123410

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# ADDITIONAL COVERED PERSONS ENDORSEMENT

This endorsement, effective on 12/27/2005 at 12:01 A.M. standard time at the address of the Named Insured

Forms a part of Policy Number: LSI000306-005

Issued to: KIRKPATRICK AND ASSOCIATES

It is agreed that Section IV of the Policy, Definition (H) is amended to include:

"**Insured**" means:

The persons identified below, but only while acting on behalf of the Named Insured:

| Name | Coverage Effective Date | Principal/Owner, Appraiser or Trainee |
|---|---|---|
| Dixie Kirkpatrick | 12/27/2005 | Principal/Owner |
| Richard Kirkpatrick | 12/27/2005 | Appraiser |
| Hunter Dietz | 12/27/2005 | Trainee |

All other terms and conditions of this Policy remain unchanged.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# POLLUTION LIABILITY ENDORSEMENT

It is agreed that Section V. of the Policy, Exclusion (S) is deleted and replaced with the following:

This Policy does not apply to and the Company shall not be liable for **Damages** and / or **Claims Expenses** resulting from any **Claim** made against an **Insured**:

for, based upon, or arising from:

(1) diminution of value, which would not have occurred in whole or in part had there not been actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

(2) any request, demand or order to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

(3) testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**; or

(4) the **Insured** noting or failing to note the presence or absence of any **Pollutants**; however, the Company shall pay **Claims Expenses** for the defense of **Claims** for, based upon, or arising from the **Insured's** noting or failing to note the presence or absence of any **Pollutants** up to a maximum of $100,000 for the **Policy Period**, without the Company incurring any liability to pay **Damages**.

All other terms and conditions of this Policy remain unchanged.

# Liberty Surplus Insurance Corporation

## Cap on Losses from Certified Acts of Terrorism

The following is hereby added to the Policy and shall apply to all coverages:

With respect to any one or more "certified acts of terrorism", Liberty Surplus Insurance Corporation (hereinafter "we" or "us") will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the Policy or affect the conduct of the United States Government by coercion.

**All other terms and conditions of this policy remain unchanged.**

LSIC CG21701102 (01/05)           Page 1 of 1
Certified

Includes copyrighted material by Insurance Services Office, Inc. with its permission.

**LIBERTY SURPLUS INSURANCE CORPORATION**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM THROUGH 12/31/05 FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

### SCHEDULE

| |
|---|
| Terrorism Premium (Certified Acts) through 12/31/05   $— 0 — |
| Additional information, if any, concerning the terrorism premium: |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

**C. Possibility Of Additional Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. Continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion on this policy. If coverage continues past 12/31/05, we will calculate the premium for such period of time and charge additional premium if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

# COMPLAINT NOTICE

## Important Notice

To obtain information or make a complaint:

1. You may contact your agent, Liability Insurance Administrators, at 800-334-0652

2. You may write to Liberty Surplus Insurance Corporation at:
   175 Berkeley Street
   Boston, MA 02117

3. You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:
   1-800-252-3439

4. You may write the Texas Department of Insurance:
   P.O. Box 149104
   Austin, Texas 78714-9104
   FAX #(512) 475-1771

**5. PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact Liability Insurance Administrators first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**6. ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become part or condition of the attached document.

# LIBERTY INSURANCE UNDERWRITERS INC. / LIBERTY SURPLUS INSURANCE CORPORATION

## NOTICE

**Notice to Arizona Applicants:**
For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Notice to California Applicants:**
Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Notice to Colorado Applicants:**
It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**Notice to Florida and Idaho Applicants:**
Any person who knowingly and with intent to injure, defraud, or deceive any employer or employee, insurance company or self-insured program files a statement of claim containing any false or misleading information is guilty of a *felony. *Third degree felony in Florida.

**Notice to Indiana Applicants:**
A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete or misleading information commits a felony.

**Notice to Arkansas, Kentucky, Michigan, and New Jersey Applicants:**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act which is a crime.

**Notice to Louisiana Applicants:**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Notice to Maine and New Mexico Applicants:**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or a denial of insurance benefits.

**Notice to Minnesota Applicants:**
A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**Notice to New York Applicants:**
Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed five thousand dollars ($5,000) and the stated value of the claim for each such violation.

**Notice to Nevada Applicants:**
Pursuant to NRS686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a felony.

**Notice to Ohio Applicants:**
Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing false or deceptive statement is guilty of insurance fraud.

**Notice to Oklahoma Applicants:**
Warning: Any person who knowingly and with intent to defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete, or misleading information is guilty of a felony.

**Notice to Oregon Applicants:**
Any person who makes an intentional misstatement that is material to the risk may be found guilty of insurance fraud by a court of law.

**Notice to Pennsylvania Applicants:**
Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalty.

**Notice to Virginia Applicants:**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

# Appraisers Liability Insurance Trust Purchasing Group

# Real Estate Appraisers Professional Liability Insurance Policy

This Insurance is issued pursuant to the terms of the Federal Risk Retention Act of 1986 and is not protected by an insurance insolvency guaranty fund of your state and may not be subject to all insurance laws and regulations of your state

**COVERAGE HEREUNDER IS PROVIDED ON A CLAIMS MADE BASIS.
PLEASE READ CAREFULLY.**

EXECUTIVE OFFICES

**LIBERTY SURPLUS INSURANCE CORPORATION**
175 Berkeley Street, Mailstop 3E
Boston, MA 02117



**Liberty Surplus Insurance Corporation**
(hereinafter called "the Company")

**REAL ESTATE APPRAISERS**
**PROFESSIONAL LIABILITY INSURANCE POLICY**

THIS IS A CLAIMS MADE AND REPORTED POLICY. COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY IN WRITING NO LATER THAN SIXTY (60) DAYS AFTER EXPIRATION OR TERMINATION OF THIS POLICY FOR A WRONGFUL ACT COMMITTED ON OR AFTER THE RETROACTIVE DATE AND BEFORE THE END OF THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY.

All words that are in bold face type, other than the caption titles, have special meanings set forth in Section IV., DEFINITIONS, of the Policy.

In consideration of and subject to the payment of the premium, the agreement of the Named Insured to pay the Deductible amount stated in the Declarations and described herein, and in reliance upon the particulars, statements, representations, attachments and exhibits contained in and submitted with the Application which shall be the basis of this Policy and deemed to be incorporated herein, and subject to all the terms, conditions, limitations and any endorsements to this Policy, the Company and Named Insured agree as follows:

## I. INSURING AGREEMENTS

(A) The Company will pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as Damages and Claims Expenses resulting from Claims first made against the Insured during the Policy Period, or Extended Reporting Period, if applicable, as a result of a Wrongful Act by the Insured or any Entity for whom the Insured is legally liable, provided that:

(1) such Wrongful Act was committed on or after the Retroactive Date and before the end of the Policy Period; and

(2) prior to the Inception Date stated in the Declarations of this Policy, the Insured did not know or could not have reasonably expected that such Wrongful Act might give rise to a Claim.

As a condition precedent to coverage, the Insured shall report all Claims in writing to the Company as soon as practicable, but in no event later than sixty (60) days after expiration or termination of this Policy, or during the Extended Reporting Period, if applicable.

(B) The Insured shall not admit or assume liability for any Wrongful Act, or settle any Claim, or incur any expenses, including Claims Expenses, without the written consent of the Company. However, the Insured must take all reasonable action within its ability to prevent or mitigate any Claim which would be covered under this Policy. The Company has the right to make such investigation and conduct negotiations and, with the written consent of the Insured, effect settlement of any Claim as the Company deems reasonable.

If the Insured refuses to consent to a settlement recommended by the Company and elects to contest or continue to contest the Claim, the Company's liability shall not exceed the amount for which the Company would have been liable for Damages and Claims Expenses if the Claim had been so settled when and as so recommended, and the Company shall have the right to withdraw from the further defense of the Claim by tendering control of the defense thereof to the Insured. The operation of this paragraph shall be subject to the Limits of Liability and Deductible provisions of this Policy.

The Company shall not be obligated to pay any Damages and/or Claims Expenses, or to undertake or continue the defense of any Claim after the applicable limit of the Company's liability has been exhausted by payment of Damages and/or Claims Expenses or after deposit of the applicable limit of the Company's liability with or subject to control of a court of competent jurisdiction.

## II. TERRITORY AND DEFENSE

(A) The coverage afforded by this Policy applies worldwide, but only if the Claim is made in the Unites States of America, its territories and possessions, or Canada.

(B) The Company has the sole right to appoint defense counsel and the right and duty to defend any Claim made against the Insured.

## III. SUPPLEMENTAL PAYMENTS

Subject to all other terms and conditions, this Policy affords the following Supplemental Payments. Any payment made by the Company under this section shall not apply to the Deductible and shall not reduce the Limits of Liability.

(A) PRE-CLAIM ASSISTANCE

If during the Policy Period the Insured reports a specific Wrongful Act in accordance with Conditions (A) of this Policy, the Company, at its sole option, may investigate such specific Wrongful Act as it deems appropriate. Once the Company has incurred $5,000 of expenses for such an investigation, the Company shall deem that a Claim arising from such specific Wrongful Act has been made. Until such time that a Claim arising from such specific Wrongful Act has or is deemed to have been made, any amounts incurred by the Company for such investigation shall be at the Company's expense.

(B) DISCIPLINARY PROCEEDINGS

If a Disciplinary Proceeding is commenced against the Insured during the Policy Period and reported to the Company within sixty (60) days of the Insured's receipt of first notice of the Disciplinary Proceeding, the Company will reimburse the Insured for reasonable attorney's fees incurred in responding to such Disciplinary Proceeding, provided such fees are incurred by an attorney(s) designated by the Company, or designated by the Insured with the written consent of the Company. The maximum payment made by the Company pursuant to this Supplemental Payment shall be $2,500 for each Policy Period regardless of the number of Disciplinary Proceedings. The Company shall not pay Damages pursuant to this provision, including but not limited to any fines, sanctions or statutory penalties.

(C) REIMBURSEMENT OF EXPENSES

If the Insured is requested by the Company to attend hearings, depositions and trials relative to the defense of a Claim, the Company shall reimburse the Insured's actual loss of earnings and reasonable expenses due to such attendance up to $250 per day. The maximum payment made by the Company pursuant to this Supplemental Payment shall be $2,500 for each Policy Period.

## IV. DEFINITIONS

(A) "Claim" means receipt of a demand naming the Insured seeking Damages and/or Professional Services arising out of a Wrongful Act by the Insured or any Entity for whom the Insured is legally liable.

(B) "Claims Expenses" means:

(1) Reasonable and necessary fees charged by an attorney(s) designated by the Company, or designated by the Insured with the Company's written consent, to defend a Claim and;

(2) All other fees, costs and charges, resulting from the investigation, adjustment, defense, and appeal of a Claim, if incurred by the Company, or by the Insured with the Company's written consent, including premiums on appeal bonds provided that the Company shall not be obligated to apply for or furnish such appeal bonds.

The determination by the Company as to the reasonableness of Claims Expenses shall be conclusive on the Insured. Claims Expenses do not include salary charges, wages or expenses of partners, principals, officers, directors, members or employees of either the Company or Insured.

(C) "Damages" means a compensatory monetary amount for which the Insured may be held legally liable, including judgments (inclusive of any pre- or post-judgment interest), awards, or settlements negotiated with the approval of the Company. Damages do not include any return, withdrawal or reduction of professional fees, profits or other charges, or fines, sanctions, taxes or penalties. Damages do not include any punitive or exemplary damages, attorney fee awards or the multiple portion of any multiplied damage award.

(D) "Disciplinary Proceeding" means any proceeding, investigation or review by a regulatory or disciplinary official, board or agency to investigate charges of professional misconduct in the performance of Professional Services.

(E) "Entity" means any individual, sole proprietor, partnership, or corporation or other form of association recognized as such by law, but does not include any joint venture in which the Insured is a participant.

(F) "Extended Reporting Period" means the applicable period of time after the end of the Policy Period for reporting Claims arising out of Wrongful Acts committed or alleged to have been committed prior to the end of the Policy Period and on or subsequent to the Retroactive Date, and otherwise covered by this Policy.

(G) "Inception Date" means the effective date of the first Real Estate Appraisers Professional Liability Insurance Policy issued by the Company, or another member company of the Liberty Mutual Group, to the Named Insured and continuously renewed and maintained in effect up to the inception of this Policy Period.

(H) "Insured" means only the following:

(1) The Named Insured designated in Item 1 of the Declarations, or by endorsement to this Policy;

(2) Any person who is, was, or hereafter becomes a partner principal, officer, director, member, or employee of the Named Insured, but only while acting on behalf of the Named Insured;

(3) Independent contractors who are natural persons, or any temporary personnel, but only while acting under the direct supervision and on behalf of the Named Insured;

(4) The estate, heirs, executors, administrators, and legal representatives of an Insured, in the event of such Insured's death, disability, incapacity, insolvency, or bankruptcy, but only to the extent such Insured would have otherwise been provided coverage under this Policy;

(5) The lawful spouse of any Insured solely by reason of:

(a) Spousal status, or;

(b) A spouse's ownership interest in property or assets that are sought as recovery.

This Definition (H)(5) shall not apply to the extent a Claim alleges any wrongful act or omission by such spouse

(I) "Mediation" means a non-binding process in which a neutral panel or individual assists the parties in reaching their own settlement. To be considered Mediation under this Policy, the process must be of a kind set forth in the Commercial Mediation Rules of the American Arbitration Association. The Company, however, at its sole option, may recognize any Mediation process or forum presented for approval.

(J) "Personal Injury" means false arrest, detention or imprisonment, or malicious prosecution; the publication or utterance of a libel or slander or other defamatory or disparaging material; a publication or utterance in violation of an individual's right of privacy; wrongful entry or eviction; or the invasion of the right of private occupancy.

(K) "Policy Period" means the period specified in Item 2 of the Declarations, or any shorter period that may occur as a result of a cancellation of this Policy, and specifically excludes any Extended Reporting Period hereunder.

(L) "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to asbestos, radon, formaldehyde, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and "waste". "Waste" includes materials to be recycled, reconditioned or reclaimed.

(M) "Professional Services" means those services the Insured is legally qualified to perform for others in the Insured's capacity as a Real Estate Appraiser.

(N) "Real Estate Appraiser" means an Entity engaged in the profession of estimating the value of real property for others for a fee, including services usually and customarily performed or rendered by a Real Estate Appraiser

(O) "Retroactive Date" means the date specified in Item 4 of the Declarations. This Policy shall only apply to Claims resulting from Wrongful Acts committed on or after that date

(P) "Wrongful Act" means any actual or alleged act, error, omission or Personal Injury in the rendering of or failure to render Professional Services.

## V. EXCLUSIONS

This Policy does not apply to and the Company shall not be liable for Damages and/or Claims Expenses resulting from any Claim made against an Insured:

(A) for, based upon, or arising from any deliberately dishonest, malicious, criminal or fraudulent act or omission or any willful violation of law by an Insured; however, this Exclusion shall not apply to any Insured that did not commit, participate in or have knowledge of any such act, omission or violation of law described in this Exclusion;

(B) by or on behalf of or with the assistance of any:

  (1) Insured or

  (2) Entity of which the Insured is a director, officer, partner, principal stockholder or employee; or

  (3) Entity under common ownership with the Insured;

(C) for, based upon, or arising from actual or alleged discrimination, humiliation, harassment, or misconduct by the Insured because of race, creed, color, age, gender, sex, sexual preference or orientation, national origin religion, disability, handicap, or marital status; however, the Company shall pay Claims Expenses for the defense of such Claims up to a maximum of $50,000 for the Policy Period, without the Company incurring any liability to pay Damages. The Company's defense obligation does not extend to any administrative complaint filed with any state or federal agency.

(D) by a current or former employee, independent contractor or job applicant of the Insured in their capacity as such;

(E) for, based upon, or arising from bodily injury, sickness, disease, emotional distress, mental anguish, outrage, humiliation or death;

(F) for, based upon, or arising from injury to or destruction of any tangible property including loss of use thereof;

(G) for based upon, or arising from the liability of others assumed by the Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement;

(H) for, based upon, or arising from Professional Services involving real property in which the Insured or a member of the Insured's family has, had or contemplated having an ownership interest;

(I) for, based upon, or arising from Professional Services involving real property for which the Insured, or an Entity in which the Insured is a partner, officer, director, stockholder or employee, acts as a real estate agent, real estate broker or property manager;

(J) for, based upon, or arising from representations or warranties, express, implied or otherwise, made by the Insured pertaining to the guarantee of future value of real property;

(K) for, based upon, or arising from the Insured's activities as a property manager, real estate agent or real estate broker;

(L) for, based upon, or arising from:

  (1) the performance of Professional Services for a real estate syndicate(s), real estate investment trust(s) or limited partnership which utilizes the Insured's appraisal or report, or any information contained therein, to solicit investors or limited partners.

  (2) alleged violations of the Securities Act of 1933 or 1934 and the amendments thereto, or any state blue sky or securities law or similar federal or state law,

This Exclusion shall not apply if the Insured's appraisal or report is prepared for or on behalf of a commercial lender, or an affiliate or subsidiary of a commercial lender, or any conduit lender.

(M) for, based upon, or arising from Professional Services performed in contravention of any governmental licensing, certification, or other applicable regulatory requirement, or in violation of any penal statute or ordinance.

(N) for based upon, or arising from Professional Services involving undeveloped or vacant land whose proposed use is for multiple unit single family housing developments, condominium developments, co-operative housing developments or apartment developments consisting of 10 units or more;

(O) for, based upon, or arising from Professional Services involving "commercial property" unless the Insured's appraisal or report is attested to by an Insured who has been specifically approved by the Company to do commercial appraisals and so indicated by being named in an endorsement attached to and made a part of this Policy;

"Commercial Property" means any property other than a single family residence, single family vacant land, multi-family units of 9 or less, and vacant land for multi-family units of 9 or less

(P) for, based upon, or arising from the insolvency of the Insured;

(Q) for, based upon, or arising from the appraisal or appraisals of two or more properties that:

  (1) were sold within the twelve (12) months prior to, or had another sale pending at, the time of the appraisal(s); and

  (2) the Insured knew of or should have discovered such sale or pending sale by consulting usual and customary data sources; and

  (3) the Insured failed to note such sale or pending sale on the appraisal(s)

(R) for, based upon, or arising from punitive, exemplary or multiple damages or attorney fee awards or any other type of non-compensatory damages awarded pursuant to the "Deceptive Trade Practices Act", "Consumer Protection Act" or any similar statutes of any state, or the "Federal Racketeer Influenced and Corrupt Organization Act";

(S) for based upon, or arising from:

  (1) diminution of value, which would not have occurred in whole or in part had there not been actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants at any time; or

  (2) any request, demand or order to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

  (3) testing for monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Pollutants; or

  (4) the Insured noting or failing to note the presence or absence of any Pollutants

VI. CONDITIONS

(A) REPORTING OF WRONGFUL ACTS THAT MAY GIVE RISE TO A CLAIM

If during the Policy Period the Insured becomes aware of a specific Wrongful Act that may reasonably be expected to give rise to a Claim against the Insured, and if the Insured reports such specific Wrongful Act to the Company during the Policy Period in writing, then any Claim subsequently arising from such specific Wrongful Act duly reported in accordance with this paragraph shall be deemed under this

Policy to be a Claim made during the Policy Period Such written notice to the Company shall include:

(1) particulars as to the reasons for anticipating such a Claim; and

(2) the nature and dates of the alleged Wrongful Act; and

(3) the alleged injuries or damages sustained; and

(4) the names of potential claimants, if available; and

(5) the manner in which the Insured first became aware of the specific Wrongful Act

(B) NOTICE OF CLAIM OR WRONGFUL ACTS

In the event of a Claim the Insured shall as a condition precedent to the coverage afforded by this Policy:

(1) Immediately forward to the Company every demand, notice, summons or other process including institution of arbitration proceedings received by the Insured.

(2) Immediately forward to the Company any other relevant information as requested by the Company including copies of the appraisal(s) or other work product giving rise to the Claim.

Notice of any Claim or specific Wrongful Act shall be given in writing as described in Item 7 of the Declarations. Notice shall not be effective until the date of receipt by the Company at this address.

(C) COOPERATION

The Insured shall cooperate with the Company. Upon the Company's request, the Insured shall submit to examination and questioning by a representative of the Company, under oath if required, shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, and shall provide the Company with any available information and documentation relevant to any matter under investigation by the Company, without charge to the Company.

Additionally, upon the Company's request and in accordance with Section III(C), the Insured shall attend hearings, depositions and trials relative to the defense of a Claim.

The Insured shall take such action as may be necessary to secure and effect any rights of indemnity, contribution or apportionment which the Insured and/or the Company may have.

(D) LIMITS OF LIABILITY

The Company's maximum liability for all Damages and Claims Expenses resulting from each Claim shall be the Limit of Liability for each Claim set forth in Item 6(A) of the Declarations. The Company's maximum aggregate liability for all Damages and Claims Expenses resulting from all Claims covered by this Policy shall be the aggregate Limit of Liability for all Claims set forth in Item 6(B) of the Declarations

Two or more Claims alleging, based upon, arising out of or attributable to the same or related Wrongful Act(s) shall be treated as a single Claim regardless of whether made against one or more than one Insured.

All Claims arising out of the same Wrongful Act shall be considered first made within the Policy Period in which the earliest of such Claims was first made, or deemed to be made pursuant to Condition (A) of this Policy, and all such Claims shall be subject to one such Limit of Liability as set forth in Item 6(A) of the Declarations

The Limits of Liability of the Company for the Extended Reporting Period, if applicable, shall be part of, and not in addition to, the Limits of Liability of the Company for the Policy Period

Any payment of Damages and/or Claims Expenses by the Company shall reduce the Limits of Liability

Claims made against more than one Insured under this Policy shall not operate to increase the limit of the Company's liability.

(E) DEDUCTIBLE

The Company shall only be liable for those amounts payable under this Policy for:

(1) Claims Expenses, and

(2) Damages which are in excess of the applicable Deductible stated in Item 3 of the Declarations.

The Deductible shall apply separately to each Claim and shall be borne by the Insured and remain uninsured. For purposes of the Deductible, Claims arising out of the same Wrongful Act shall be considered one Claim, and only one Deductible amount shall apply thereto. The Insured shall be liable for the Deductible amount set forth in Item 3 of the Declarations for each Claim. The Deductible shall not reduce or increase the Limits of Liability.

The Insured shall promptly make any required Deductible payments within thirty (30) days of written demand by the Company. The Company shall have no obligation to make payments within the Deductible and to then seek reimbursement from the Insured.

(F) DEDUCTIBLE CREDITS

(1) EARLY RESOLUTION OF CLAIMS DEDUCTIBLE CREDIT

If within one year of being reported in accordance with Condition (B) of this Policy, or within one year of being deemed to be made pursuant to Condition (A) of this Policy, a Claim is fully and finally resolved to the satisfaction of all parties, including the Company, and all Damages and Claims Expenses arising from such Claim have been paid, the Insured's Deductible obligation for such Claim shall be reduced by 25% up to a maximum reduction of $5,000.

(2) MEDIATION OF CLAIMS DEDUCTIBLE CREDIT

If a Claim is fully and finally resolved to the satisfaction of all parties including the Company as a result of Mediation, the Insured's Deductible obligation for such Claim shall be reduced by 50% up to a maximum reduction of $5,000

(G) ACQUISITION OR CREATION OF ANOTHER ENTITY

If during the Policy Period, the Named Insured acquires or creates another Entity in which the Named Insured has an ownership interest of greater than 50%, such Entity shall be considered an Insured under this Policy, but only for Wrongful Acts committed after the date of acquisition or creation.

As a condition precedent to coverage under Condition (G), the Named Insured shall give written notice to the Company of the acquisition or creation of such Entity no later than ninety (90) days after the effective date of such acquisition or creation, together with such information that the Company may require.

Upon receipt of notice of such acquisition or creation, the Company may at its sole option agree to appropriately endorse this Policy subject to additional premium and/or changed terms and conditions. If the Named Insured does not agree to the additional premium and/or changed terms and conditions, if any, coverage otherwise afforded under this provision for such acquired or created Entity shall terminate ninety (90) days after the effective date of such acquisition or creation, or at the end of the Policy Period, whichever is earlier. If the Named Insured ceases to have an ownership interest of greater than 50% in such acquired or created Entity, coverage otherwise afforded under this provision shall terminate effective on the date such ownership interest ceases.

### (H) NOTICE OF CANCELLATION

This Policy may be cancelled by the Named Insured by surrender of this Policy to the Company or by giving written notice to the Company stating when thereafter such cancellation shall be effective. If this Policy is cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium hereon, except as otherwise provided in this Policy. The Company may cancel this Policy for material misrepresentation in the Application for this Policy, for any material change in the risk, for any revocation, suspension or surrender of the Insured's professional license or right to practice his profession or for non-payment of premium or Deductible. Notice of cancellation shall be mailed to the Named Insured by registered, certified, or other first class mail, at the Named Insured's address shown in Item 1 of the Declarations. Written notice shall state when, not less than sixty (60) days thereafter (or ten (10) days thereafter when cancellation is due to non-payment of premium or Deductible), the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice. If this Policy shall be cancelled by the Company, the Company shall retain the pro-rata proportion of the premium hereon.

### (I) NOTICE OF NON-RENEWAL

The Company may non-renew this Policy by mailing written notice to the Named Insured by registered, certified or other first class mail, at the Named Insured's address shown in Item 1 of the Declarations. Written notice shall state when, not less than sixty (60) days thereafter the non-renewal shall be effective.

### (J) EXTENDED REPORTING PERIOD

In case of cancellation or non-renewal of this Policy, by either the Named Insured or the Company, for reasons other than material misrepresentation in the Application for this Policy or non-payment of premium or Deductible, the Named Insured shall have the right upon payment of an additional premium, to an extension of coverage under this Policy subject to all other terms, conditions, limitations of and any endorsements to this Policy for a period of either one year for an additional premium of 100% of the total annual premium; or two years for an additional premium of 150% of the total annual premium; or three years for an additional premium of 200% of the total annual premium following the effective date of such cancellation or refusal to renew but only with respect to any **Wrongful Act** committed before the date of such cancellation or non-renewal.

If the Named Insured shall cancel or fail to renew this Policy due to retirement from active business as a **Real Estate Appraiser**, the Named Insured shall have the right upon payment of an additional premium, to an unlimited extension of coverage under this Policy, subject to all other terms, conditions, limitations of and endorsements to this Policy. The Extended Reporting Period would apply to any **Wrongful Act** committed before the cancellation or failure to renew. The option is only available if:

(1) the Named Insured was continuously insured with the Company for at least three (3) consecutive years; and

(2) the Named Insured was employed on a full-time basis (at least thirty (30) hours per week) as a **Real Estate Appraiser** for at least twenty (20) consecutive years.

The premium for this unlimited Extended Reporting Period shall be 300% of the Company's total annual premium.

The offer of renewal terms, conditions, Limits of Liability and/or premiums different from those of this Policy shall not constitute a cancellation or refusal to renew.

The **Extended Reporting Period** shall terminate on the effective date and hour of any other insurance issued to the Named Insured or successor to the Named Insured which replaces in whole or in part the coverage afforded by the **Extended Reporting Period**.

As a condition precedent to the Named Insured's right to purchase the **Extended Reporting Period**, the full premium and any Deductible(s) due for this Policy and Policy Period must have been paid.

The Named Insured's right to purchase the **Extended Reporting Period** must be exercised by notice in writing not later than sixty (60) days following the non-renewal or cancellation date of this Policy, and must include payment of premium for the applicable **Extended Reporting Period** as well as payment of all premiums and any Deductible(s) due the Company. If such notice is not so given to the Company, the Named Insured shall not, at a later date, be able to exercise such right.

At the commencement of any **Extended Reporting Period**, the entire premium thereafter shall be deemed earned and in the event the Named Insured terminates the Extended Reporting Period before its expiration date, the Company shall not be liable to return to the Named Insured any portion of the premium for the **Extended Reporting Period**.

The fact that this Policy may be extended by virtue of an **Extended Reporting Period** shall not in any way increase the Limits of Liability as set forth in the Declarations. The **Extended Reporting Period** shall be renewable at the sole option of the Company.

### (K) OTHER INSURANCE

If any **Claim** or **Wrongful Act** noticed to the Company under this Policy is insured by another valid policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy Number indicated on this Policy's Declarations.

(L) SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to all of the Insured's rights of recovery against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after a Claim is made to prejudice such rights. The Company hereby waives its subrogation rights against a client of the Insured to the extent that the Insured had, prior to a **Claim**, or a **Wrongful Act** reasonably expected to give rise to a **Claim**, entered into a written agreement to waive such rights.

Any amount recovered upon the exercise of such rights of subrogation shall first be applied to the repayment of expenses incurred by the Company toward subrogation, second toward reimbursement of any payments made by the Insured pursuant to the **Insured's Deductible**, and any remaining balance shall be the Company's.

(M) ALTERATION AND ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement by an authorized representative of the Company.

(N) REIMBURSEMENT OF THE COMPANY

If the Company has paid any **Damages** and/or **Claims Expenses** in excess of the applicable Limit of Liability or within the amount of the applicable **Deductible**, the Insured shall be liable to the Company for any and all such amounts and, upon demand, shall pay such amounts to the Company promptly.

(O) ENTIRE CONTRACT

By acceptance of this Policy the **Insured** agrees that the statements in the Declarations and Application are its agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the Insured and the Company.

(P) AUDIT

The Company may examine and audit the Insured's books and records at any time during the **Policy Period** and within three (3) years after termination of this Policy to the extent such books and records relate to the subject matter of this Policy.

(Q) NAMED INSURED SOLE AGENT

The Named Insured shall be the sole agent of all Insureds hereunder for the purpose of effecting or accepting any amendments to or cancellation of this Policy, for the purpose of receiving such notices as may be required by law and/or any provision(s) of this Policy, for the completing of any Application and the making of any representations, for the payment of any premium and the receipt of any return premium that may become due under this Policy, for the payment of any Deductible obligations that may become due under this Policy, and the exercising or declining to exercise any right under this Policy, including declining or exercising any **Extended Reporting Period**.

(R) BANKRUPTCY OR INSOLVENCY

The bankruptcy or insolvency of any Insured or an Insured's estate will not relieve the Company of its obligations under this Policy.

IN WITNESS WHEREOF, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_____
President

_____
Secretary

Authorized Representatives of Liberty Surplus Insurance Corporation.